No. 23-14115

In the

# United States Court of Appeals
## for the Eleventh Circuit

IN RE SECRETARY, STATE OF GEORGIA,

*Petitioner.*

On Petition for Writ of Mandamus to the United States District Court
for the Northern District of Georgia, Atlanta Division.

*Donna Curling et al. v. Brad Raffensperger, et al.*
No. 1:17-cv-2989-AT — Amy Totenberg, *Judge*

## REPLY IN SUPPORT OF
## PETITION FOR WRIT OF MANDAMUS

### RELIEF NEEDED BY JANUARY 8, 2024

Bryan P. Tyson
Diane F. LaRoss
Bryan F. Jacoutot
TAYLOR ENGLISH DUMA LLP
1600 Parkwood Circle, Suite 200
Atlanta, GA 30339
E:btyson@taylorenglish.com
    dlaross@taylorenglish.com
    bjacoutot@taylorenglish.com

Vincent R. Russo
Josh Belinfante
Carey A. Miller
Edward A. Bedard
Javier Pico Prats
ROBBINS ALLOY BELINFANTE
    LITTLEFIELD, LLC
500 14th St. NW
Atlanta, GA 30318
E:vrusso@robbinsfirm.com
    jbelinfante@robbinsfirm.com
    cmiller@robbinsfirm.com
    ebedard@robbinsfirm.com
    jpicoprats@robbinsfirm.com

*Counsel for Petitioner*

*In re Raffensperger, et al.*
No. 23-14115

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to Eleventh Circuit Rules 21-1 and 26.1-1 through 26.1-3, counsel for Petitioner Brad Raffensperger hereby certify that the Certificate of Interested Persons and Corporate Disclosure Statement contained in his opening Petition, as amended by Respondents Donna Curling, Donna Price, and Jeffrey Schoenberg, is complete.

*/s/ Vincent R. Russo*
Vincent R. Russo

C-1 of 1

# TABLE OF CONTENTS

Certificate of Interested Persons .................................................. 1

Table of Authorities.................................................................ii

Introduction.......................................................................... 1

Argument.............................................................................5

    I.    Plaintiffs have not identified any unique information that is "essential" to their case..............................................................5

    II.   Plaintiffs have not demonstrated that any information was unavailable from other sources. .................................................11

Conclusion ........................................................................ 16

Certificate of Compliance ...................................................... 18

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Celebrezze*, 460 U.S. 780 (1983) .....................................2, 4, 8

*Atlanta J. & Const. v. City of Atlanta Dep't of Aviation*,
    175 F.R.D. 347 (N.D. Ga. 1997) ...........................................................11

*Bogan v. City of Bos.*, 489 F.3d 417 (1st Cir. 2007) .................................8

*Burdick v. Takushi*, 504 U.S. 428 (1992) ........................................2, 5, 8

*Celentano v. Nocco*, No. 8:15-CV-1461-T-30AAS,
    2016 WL 4943939, at *1 (M.D. Fla. Sept. 16, 2016)..........................11

*Curling v. Raffensperger*, 1:17-CV-2989-AT,
    2023 WL 7463462, at *1 (N.D. Ga. Nov. 10, 2023)...............................2

*Fair Fight Action, Inc. v. Raffensperger*,
    333 F.R.D. 689 (N.D. Ga. 2019) ..........................................................11

*Greater Birmingham Ministries v. Merrill*,
    321 F.R.D. 406 (N.D. Ala. 2017) .........................................................11

*In re Off. of the Utah Att'y Gen.*, 56 F.4th 1254 (10th Cir. 2022) .............6

*In re Paxton*, 60 F.4th 252 (5th Cir. 2023)...........................................8–9

*In re U.S. Dep't of Educ.*, 25 F.4th 692 (9th Cir. 2022) .......................1, 5

*In re United States*, 197 F.3d 310 (8th Cir. 1999)................................5–8

*In re United States*, 985 F.2d 510 (11th Cir. 1993)..........................1, 4, 7

*Johnson v. Miami-Dade Cty.*, 948 F.3d 1318 (11th Cir. 2020)... 5, 7–8, 11

*Jones v. Governor of Fla.*, 15 F.4th 1062 (11th Cir. 2021) ..................2, 8

*McCullough v. Finley*, 907 F.3d 1324 (11th Cir. 2018)............................1

*Simplex Time Recorder Co. v. Sec'y of Lab.*,
    766 F.2d 575 (D.C. Cir. 1985) ...............................................................8

*United States v. Morgan*, 313 U.S. 409 (1951).....................................3, 8

# INTRODUCTION

There is no dispute that Plaintiffs face a high bar to compel the Secretary to personally appear at trial. Plaintiffs must demonstrate a "special need" for the Secretary's testimony by showing that he possesses unique, first-hand knowledge that is "essential" to Plaintiffs' claims. *In re United States*, 985 F.2d 510, 512 (11th Cir. 1993); *see also, e.g.*, *In re U.S. Dep't of Educ.*, 25 F.4th 692, 704 (9th Cir. 2022). In their response, Plaintiffs identify various areas of inquiry which they claim are "central" to their case and which the Secretary's testimony alone can address. Opp. at 9, 12–13, 23–26. But curiously, Plaintiffs never explain *why* these areas of inquiry are necessary to their case. They merely assert that they are so. *Cf. McCullough v. Finley*, 907 F.3d 1324, 1334 (11th Cir. 2018) (conclusory allegations and statements "carry no weight"). Plaintiffs' failure to articulate *why* the Secretary's testimony on these topics is necessary is dispositive. *See In re United States*, 985 F.2d at 512 (Plaintiffs bear the burden of showing the "special need").

Nevertheless, a brief examination reveals that questions Plaintiffs identify are both unnecessary and irrelevant to the controlling analysis articulated in the *Anderson* and *Burdick* line of cases. *Curling v.*

*Raffensperger*, 1:17-CV-2989-AT, 2023 WL 7463462, at *44 (N.D. Ga. Nov. 10, 2023) (order on summary judgment) (citing *Burdick v. Takushi*, 504 U.S. 428 (1992); *Anderson v. Celebrezze*, 460 U.S. 780 (1983)). Pursuant to this precedent, the district court described the Plaintiffs' purported constitutional injury as Plaintiffs' "risk of harm that the current election system's security vulnerabilities and operational issues imposes on Plaintiffs' right to cast an effective, accurately counted vote." *Id.* Putting aside the fundamental problems with concluding that a hypothetical "risk" of anything imposes an unconstitutional burden on the right to vote, this Court has repeatedly explained that questions of intent are irrelevant under the *Anderson* and *Burdick* framework. *E.g.*, *Jones v. Governor of Fla.*, 15 F.4th 1062, 1065 (11th Cir. 2021). Consequently, Plaintiffs' grasping for relevance notwithstanding, there is no element that requires them to prove *why* the Secretary's Office awarded Dominion the contract for Georgia's voting system, *why* the Secretary has made the public statements that concern Plaintiffs, or whether he has read Plaintiffs' expert's report—because none of those items has any bearing on the claims in this case. Opp. at 9–16.

In addition, Plaintiffs have already explored (or had the opportunity to explore) the irrelevant issues they identify, thus confirming the conclusion that what Plaintiffs actually seek is an improper opportunity to "probe the mental processes" of Secretary Raffensperger. *United States v. Morgan*, 313 U.S. 409, 422 (1951). Indeed, Plaintiffs have made their political opposition to the Secretary clear. And their recent public statements reveal that Plaintiffs' subpoena of the Secretary is primarily for political gain and fundraising efforts, not to pursue testimony "essential to their case." In one recent email to its members, for example, the Coalition suggests that Plaintiffs have no intention of limiting themselves to the areas they identified in their briefs:

> Our brief also outlines key issues in the case and demonstrates why his statements under oath are essential. There's *much more* that Plaintiffs plan to ask him in court. Stay tuned.

Ex. 10 at 2 (Jan. 1, 2024 Email from Coalition for Good Governance) (emphasis in original).[1] The next day, the Coalition's Executive Director

---

[1] To avoid confusion, the exhibits attached to this reply are numbered sequentially from the exhibits attached to the Secretary's Petition.

used the Secretary's Petition as the basis for a fundraising appeal, asking for donations to "support our very effective David and Goliath efforts as our legal team seeks the 'ultimate fact check' of Raffensperger's many unsupported claims about his hand-picked voting system and the Coffee [County] breaches." Ex. 11 (Jan. 2, 2024 Marilyn Marks 'X' Thread). Statements like these further underscore the serious federalism concerns this and other courts have raised about utilizing the federal judiciary's coercive power to haul a state's principal elected officials into court, and that compelling public officials' testimony would wrongly "monopolize[ his or her time with preparing and testifying" instead of governing. *In re United States*, 985 F.2d at 512.

To be clear, the Secretary would welcome the opportunity to testify about Plaintiffs' unfounded fears and selective concerns about election integrity. But there are larger principles at stake, including the undisputed importance of federalism and the need for public officials to focus on the work citizens elected them to do. These concerns, ignored by Plaintiffs but established in binding and persuasive precedent, are even more pressing now that Plaintiffs have made clear the topics they supposedly intend to pursue are plainly irrelevant to the *Anderson-*

*Burdick* analysis. The Court should grant the Secretary's Petition and direct the district court to quash the subpoena.

## ARGUMENT

### I. Plaintiffs have not identified any unique information that is "essential" to their case.

Plaintiffs' response articulated issues which they claim "[o]nly Secretary Raffensperger can explain[.]" Opp. at 13. But Plaintiffs' response ignores the primary question posed by the "special need" test: whether the testimony sought from the official's testimony is *essential* to Plaintiffs' *claims*. This is dispositive. By failing to demonstrate that the areas of inquiry are relevant, let alone essential to their case, Plaintiffs cannot show the "exceptional circumstances" necessary to warrant subpoenaing the Secretary to testify. *In re United States*, 197 F.3d 310, 314 (8th Cir. 1999); *see also Johnson v. Miami-Dade Cty.*, 948 F.3d 1318, 1329–30 (11th Cir. 2020).

As recognized by this and other appellate courts, high-ranking public officials should not be required to testify except when their testimony is "essential"—merely "relevant" testimony is not enough. *In re U.S. Dep't of Educ.*, 25 F.4th at 704; *see also, e.g.*, *Johnson*, 948 F.3d at 1329; *In re Off. of the Utah Att'y Gen.*, 56 F.4th 1254, 1264 (10th Cir.

2022); *Lederman v. New York City Dep't of Parks & Recreation*, 731 F.3d 199, 203 (2d Cir. 2013); *In re United States*, 197 F.3d 310, 312–13 (8th Cir. 1999).[2]

Plaintiffs' attempt to meet that standard fails. Opp. at 9–12. Here, Plaintiffs point to various pieces of information which they claim only the Secretary could answer, including:

- "[W]hy the Secretary's Office never performed any forensic examination of any of the DRE voting equipment or the – or the servers, the GEMS servers." Opp. at 9.

- "[W]hy Secretary Raffensperger had chosen not to have an election security expert evaluate Georgia's system." *Id.* at 10.

- Why the "front office" made the decision to move away from E-NET (Georgia's previous voter-registration system). *Id.* at 11.

- "[W]hy the Secretary's office picked a Q.R. code system" after a state-administered procurement process "rather than one that tabulates human readable text for the election system." *Id.* at 11.

- "[W]hy the Secretary selected an election system that the sole cybersecurity advisor he put on his commission objected to." *Id.* at 12.

- Whether the Secretary had personally read Dr. Halderman's (Plaintiffs' proffered expert) attack on Georgia's voting equipment; and

---

[2] Any competent counsel can identify issues which might be "relevant" to a given piece of litigation—if that were the standard, the apex doctrine would mean little. *In re U.S. Dep't of Educ.*, 25 F.4th at 704.

- Various public statements the Secretary has made defending the security of Georgia's elections.

Throughout their opposition, Plaintiffs assert that these issues are "central to this case," "at the core of this case," "at the heart of plaintiffs' claims," "key," and "material." Opp. at 9, 12–13, 23–26. But beyond these conclusory statements, at no point do Plaintiffs ever bother to articulate *why* these issues are "essential to [their] case." *In re United States*, 197 F.3d at 314. As they bear the burden of demonstrating the necessity of this information, their failure to do so is reason enough to grant the Secretary's Petition. *See In re United States*, 985 F.2d at 512 (Plaintiffs bear the burden of showing the "special need").

But even if they had tried to do so, Plaintiffs would still fail to show that any of these areas of inquiry are "essential." This Court determines whether an official's testimony is "essential" by looking to the plaintiffs' theory of liability. *See Johnson*, 948 F.3d at 1329. Plaintiffs' central theory of liability here is that there is a sufficient risk that Georgia's voting machines could be hacked—by unknown actors, including foreign enemies—that using them is unconstitutional (even though any Georgian can vote with a hand-marked paper ballot through

– 7 –

no-excuse early voting).[3] Plaintiffs' ability—or inability—to prove that

having the option to use electronic voting machines places an

unconstitutional burden on their right to vote does not turn on the

Secretary's testimony. *See In re Paxton*, 60 F.4th 252, 258 (5th Cir.

2023). He is not an expert witness in the case, and it is "not the function

of the court to probe [his] mental processes." *Morgan*, 313 U.S. at 422;

*Bogan v. City of Bos.*, 489 F.3d 417, 423 (1st Cir. 2007); *Simplex Time

Recorder Co. v. Sec'y of Lab.*, 766 F.2d 575, 587 (D.C. Cir. 1985). Far

from being "central" or "at the core" of Plaintiffs' lawsuit, as Plaintiffs'

claim, none of these issues speak to any element of the *Anderson* and

*Burdick* analysis which governs Plaintiffs' claims. *See, e.g., Jones*, 15

F.4th at 1065; *see also Johnson*, 948 F.3d at 1329 (11th Cir. 2020)

(affirming quash of subpoena where public official's proffered testimony

was irrelevant to plaintiff's theory of the case); *In re United States*, 197

F.3d at 314 (same). The Secretary's testimony these issues is, therefore,

at best, only marginally relevant—let alone "essential"—with only the

---

[3] Plaintiffs maintain this claim despite having failed to produce any
evidence of BMDs altering votes, a ballot inaccurately marked with a
BMD, the presence of vote-changing malware on any BMD, or even
that a BMD changed a voter's selection in an actual election.

slightest connection between Plaintiffs' theories and the Secretary's decisions.

Nor does the fact that the Secretary has made public statements about Plaintiffs' attempts to sow doubt about the integrity and security of Georgia's elections mean that his testimony is now "essential." Accepting Plaintiffs' argument would render the apex doctrine toothless: if "comment[ing] publicly about a matter of public concern … imparts unique knowledge" that subjects officials to having to testify in court, "high-level officials will routinely have to testify." *In re Paxton*, 60 F.4th at 258.[4]

The tangential value of the Secretary's testimony is only further underscored by the fact that Plaintiffs elected to forego the Secretary's

---

[4] Plaintiffs attempt to distinguish *In re Paxton* in vain. The Fifth Circuit expressly held that "apart from the jurisdictional question, the district court clearly abused its discretion by refusing the quash the subpoenas." 60 F.4th at 258. The fact that the Fifth Circuit had an alternative jurisdictional basis for granting mandamus does not diminish the power and applicability of its reasoning here. Nor does Plaintiffs' distinction between a "legal" dispute and a "factual" one hold water. Opp. at 29. The plaintiffs, like Plaintiffs here, sought the Attorney General's testimony because they believed his public statements contradicted his statements in court. *In re Paxton*, 60 F.4th at 254–55. The fact that the alleged contradiction involved a legal question did not make a difference in the Fifth Circuit's analysis.

testimony during discovery. Plaintiffs argue that a deposition is not a "mandatory prerequisite," and that they should "not now be penalized" for their "unsuccessful efforts to establish critical facts without Secretary Raffensperger's testimony." Opp. at 30. But there need not be a hard-and-fast rule—it's plain common sense. If the Secretary's testimony on particular issues was "essential" to their case, one would think that Plaintiffs would have vigorously pressed the issue. And indeed, Plaintiffs conveyed to the district court that they would raise the issue again with the Court if there should be "questions [that] remain unanswered that it appears the Secretary should be capable of answering." Ex. 4 at 4. But in the nearly two years since they made that statement and the year since the last deposition they took of the Secretary's Office, Plaintiffs said nothing about seeking the Secretary's testimony. Instead, they elected to wait until the final weeks before trial—*after* the district court's ruling on the parties' extensive summary judgment briefing—to announce that they would be seeking his testimony at trial. The conclusion is obvious: the Secretary's testimony isn't really that important to Plaintiffs' case at all.

Plaintiffs' reliance on various district court opinions is unavailing.

Opp. at 22, n.7. Three of the four district court opinions Plaintiffs rely on used an incorrect standard.[5] Rather than evaluating whether the officials' testimony was *essential*, they merely focused on whether it was *relevant. See Greater Birmingham Ministries v. Merrill*, 321 F.R.D. 406, 410 (N.D. Ala. 2017) (considering "pertinent" facts); *Celentano v. Nocco*, No. 8:15-CV-1461-T-30AAS, 2016 WL 4943939, at *2 (M.D. Fla. Sept. 16, 2016) (same); *Atlanta J. & Const. v. City of Atlanta Dep't of Aviation*, 175 F.R.D. 347, 348 (N.D. Ga. 1997) (same). This Court—and its sister circuit courts—have rejected that approach. *Johnson*, 948 F.3d at 1329; *see also supra* at 5–6 (collecting cases).

## II.   Plaintiffs have not demonstrated that any information was unavailable from other sources.

Even if Plaintiffs could establish relevance to the identified areas of inquiry, they also failed to acknowledge that they explored and received answers to many of these questions in the *ten* depositions they

---

[5] The fourth case, meanwhile, did not address the necessity prong of the extraordinary circumstances test at all. *Fair Fight Action, Inc. v. Raffensperger*, 333 F.R.D. 689, 693 (N.D. Ga. 2019). That opinion focused solely on the uniqueness prong, *i.e.*, whether "the information sought [was] personal and unique to the Governor and Secretary Raffensperger" in a case involving an intentional-discrimination claim. *Id.* Thus, *Fair Fight* is inapposite to this question.

took of the Secretary's Office. With the exception of the Secretary's personal thoughts, Gabe Sterling (the Secretary's Chief Operating Officer and part of the "front office") testified to nearly all of the areas of inquiry Plaintiffs identified in their opposition.

For example, in their opposition, Plaintiffs said that "Chris Harvey, the former director of elections in the Secretary's Office" was "unable to answer questions about why the current BMD system was chosen[.]" Opp. at 11. But Plaintiffs did not mention that Mr. Sterling directly addressed that question in the first of his two depositions:

> Q: No one ever told you that Michael Shamos testified in the summer of 2019 before the Secretary announced the B.M.D. system that you should not use B.M.D.s with Q.R. codes?
>
> A. No. And let's be aware of something here. I mean, the Secretary didn't announce the B.M.D. The State legislature after, you know, several years of review after the S.A.F.E. Commission passed legislation HB 316 to basically mandate the use of a B.M.D.
>
> Q. But they did not mandate the use of Q.R. codes, did they, sir?
>
> A. They did not.
>
> Q. That's a decision that the Secretary's office made in choosing the Dominion system over non-Q.R. code options; correct?

– 12 –

> A. As I understand it, the two final bidders were both using Q.R. codes. So we really didn't have much of a decision on that.

Ex. 12, Jan. 2022 Sterling Dep. 47:2–47:20. With that testimony, the Secretary's Office—for which Mr. Sterling was a 30(b)(6) representative—answered "why the current BMD system was chosen." Opp. at 11. The fact that a different witness from the Office was unable to do so and suggested that the Secretary *might* know does not transform the question into one which only the Secretary can answer.

Mr. Sterling also answered extensive questions posed by Plaintiffs about the Office's investigation of the events in Coffee County. Indeed, Plaintiffs sought and took a second deposition of Mr. Sterling—as the Office's 30(b)(6) representative—in October 2022 for the sole purpose of asking about Coffee County. On October 10, 2022, Plaintiffs served the Secretary's Office with a Seventh Amended Notice of Deposition of Office of the Secretary of State in which they sought to explore a single new topic:

> "Any alleged event(s) known to the Secretary of State's Office … in which one or more individuals not authorized by Georgia state law obtained access to one or more components of Georgia's Current Election System in Coffee County[.]"

Ex. 13. The Secretary's Office designated Mr. Sterling to testify on its behalf, and he answered extensive questions about the investigation by the Office's investigators into the events in Coffee County, including on many of the very questions Plaintiffs identified in their opposition. For example, Plaintiffs asked Mr. Sterling about the supposed "contradictory statements concerning his Office's awareness and mitigation of the Coffee Couty breaches," Opp. at 14:

> Q. (By Mr. Cross) But the Secretary himself gave an interview just recently where he stated that the Office began investigating these allegations very soon after the breach happened, right?
>
> A. Yes. And he was wrong.
>
> Q. Right. Okay. And -- And what's the basis for your testimony that he was wrong about that?
>
> A. Okay. 'Cause I've had discussions with [the] Secretary about this interview[.] …
>
> Q. I get your testimony that he was talking about the original investigation.
>
> A. Yeah.
>
> Q. But within minutes of answering on that, according to the station, an aide to Raffensperger corrected the Secretary of State's response off camera and offered May of 2021 as the correct date.

> A. Right. And that was wrong. That was Mike Hassinger. He's new to the office, and he got '21 and '22 confused.

Ex. 14, Oct. 2022 Sterling Dep. 91:5–14, 93:4–18 (cleaned up).

Plaintiffs also asked Mr. Sterling about the policies related to "broken seals" on certain BMDs used in the November 2020 election. Ex. 12, Feb. 2022 Sterling Dep. 66:7–67:23. Mr. Sterling answered straightforwardly that they should be reported to others, that it was important to remember that "the counties are running these elections"—not the Secretary's Office—and that the full hand recount of the November 2020 election confirmed that there were no compromised machines. *Id.*

At the end of the day, the only information that Plaintiffs do not have from depositions is the Secretary's internal thought process—information which is wholly irrelevant to Plaintiffs' claims in this case. Everything else has either been fully explored or was available to explore by Plaintiffs in the *ten* depositions they took of senior staff from the Secretary's Office. Putting aside their failure to demonstrate the necessity of any of this information to their claims, they still fail to demonstrate a "special need" to call the Secretary because the

information they seek is available from other witnesses.

## CONCLUSION

For the reasons stated above and in his Petition, the Secretary requests that Court issue a writ of mandamus compelling the district court to quash Plaintiffs' trial subpoena to the Secretary or otherwise vacate its order compelling the Secretary to testify at trial.

Respectfully submitted this 3rd day of January, 2024,

*/s/ Vincent R. Russo*
Vincent R. Russo
Josh Belinfante
Carey A. Miller
Edward A. Bedard
Javier Pico Prats
ROBBINS ALLOY BELINFANTE
   LITTLEFIELD, LLC
500 14th St. NW
Atlanta, GA 30318
E:vrusso@robbinsfirm.com
   jbelinfante@robbinsfirm.com
   cmiller@robbinsfirm.com
   ebedard@robbinsfirm.com
   jpicoprats@robbinsfirm.com

Bryan P. Tyson
Diane F. LaRoss
Bryan F. Jacoutot
TAYLOR ENGLISH DUMA LLP
1600 Parkwood Circle, Suite 200
Atlanta, GA 30339
E:btyson@taylorenglish.com

dlaross@taylorenglish.com
bjacoutot@taylorenglish.com

*Counsel for Petitioner*

## CERTIFICATE OF COMPLIANCE

Although there does not appear to be a hard-and-fast rule on the type-volume limitation for replies in support of Petitions for a Writ of Mandamus, the Secretary acknowledges the principle apparent throughout the Rules that replies should be no longer than half the length of opening and opposition papers. In keeping with that principle, counsel for the Secretary certifies that this Reply in Support of the Secretary's Petition for Writ of Mandamus contains 3,159 words as counted by the word-processing system used to prepare the document.

Also pursuant to Fed. R. App. P. 21(d), this petition complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5)–(6) because the document was prepared in Microsoft Word using the proportionally-spaced Century Schoolbook typeface in a 14-point font.

*/s/ Vincent R. Russo*